IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

                                    :
TRUSTEES OF THE IUPAT
DISTRICT COUNCIL NO. 51             :
HEALTH AND WELFARE FUND, et al.
                                    : Civil Action No. DKC 11-1348
v.
                                    :
ASI SOUTHEAST, LLC, et al.
                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract action stemming from an Employee Retirement Income Security Act of 1974 ("ERISA") dispute is Plaintiffs' motion for default judgment. (ECF No. 13). The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motion will be granted in part and denied in part.

**I.   Background**

Plaintiff Painters and Allied Trades District Council No. 51 ("DC 51") is a labor organization within the meaning of section 101(5) of the Labor-Management Relations Act ("LMRA") and section 3(4) of ERISA. (ECF No. 1 ¶ 6). The other three Plaintiffs — Trustees of the IUPAT District Council No. 51 Health and Welfare Fund, Trustees of the Painters and Allied Trades District Council 51 Joint Apprenticeship Training and Journeyman Education Program, and Trustees of the Painters and

Allied Trades Labor Management Cooperation Fund — are trustees of various trust funds associated with DC 51 ("the Funds"). (*Id.* ¶¶ 3-5). The Funds are employee benefit plans within the meaning of section (3)(3) and (3)(37) of ERISA. *See* 29 U.S.C. § 1002(3),(37). The Funds were established and maintained pursuant to the provisions of the "Agreement and Declaration of Trust of the Trust Fund" ("the trust agreements") and the collective bargaining agreement between DC 51 and contractors in the painting and drywall industry and allied trades. (ECF No. 1 ¶¶ 3-5). Defendants Allglass Systems, Inc. ("ASI"), ASI Southeast, LLC ("Southeast"), and ASI Dover ("Dover") are signatories to the collective bargaining agreement. (*Id.* ¶¶ 10-12).

In January 2002, after Defendant Southeast failed to remit dues and contributions to Plaintiffs pursuant to the trust agreements and the collective bargaining agreement, the parties entered into a settlement agreement ("the 2002 Settlement Agreement") to resolve the outstanding debt. (*Id*. ¶ 15). When Defendant Southeast failed to remit payments under the terms of the 2002 Settlement Agreement, Plaintiffs commenced a lawsuit in this court to recover the monies owed. (*Id.* ¶ 16).

In January 2005, Plaintiffs entered into another settlement agreement and confession of judgment ("the 2005 Settlement Agreement") with Defendants, which resolved the claims related

2

to the 2002 Settlement Agreement. (*Id.* ¶ 17).[1] Defendants were to pay $75,000.00 plus interest via forty-eight equal installment payments of $1,727.20 to satisfy their debt. (*Id.* ¶ 18). Also, as part of the 2005 Settlement Agreement, Defendants executed a separate "Consent Order and Confession of Judgment" ("the Consent Order"), which Plaintiffs were to hold in escrow until the payments under the 2005 Settlement Agreement were made in full. (*Id.* ¶ 19). If Defendants failed to make the installment payments in accordance with the 2005 Settlement Agreement, then Plaintiffs would be entitled to enforce the Consent Order. (*See id.*). The Consent Order states that Defendants are jointly and severally liable for $109,274.37 in delinquent principal comprising unpaid dues and employee contributions, $21,854.87 in liquidated damages, and $26,500.00 in attorney's fees and costs accrued through January 2005, as well as other interest, fees, and costs. (ECF No. 1-2 ¶¶ 1, 3, 4).

Defendants made forty-four payments pursuant to the 2005 Settlement Agreement, totaling $75,996.80. They failed to submit the final four payments, with the exception of a $1,000.00 payment in August 2010. (ECF No. 1 ¶¶ 22, 23, 25).

---

[1] The 2005 Settlement Agreement included another defendant, Rein Clabbers. (ECF No. 1-1, at 1). Mr. Clabbers was the principal of Southeast, but is not a party to the present suit.

On May 17, 2011, Plaintiffs filed a complaint to commence this action, seeking monies due based on the 2005 Settlement Agreement and the Consent Order. (ECF No. 1).[2] In the complaint, Plaintiffs request $90,859.59 in damages, plus interest, costs, and fees: (1) $32,277.57 in remaining delinquent principal, (2) $3,771.64 in interest, (3) $21,854.87 in liquidated damages assessed on the delinquent principal, (4) $26,500.00 in attorney's fees and costs accrued prior to January 2005, (5) $6,455.51, as 20% of the principal delinquency,[3] (6) any additional delinquency accrued by the time of judgment plus interest and liquidated damages on that amount, and (7) costs and fees.

Plaintiffs served the summons and complaint on ASI on May 18, 2011, and on Southeast and Dover on May 20, 2011. When Defendants failed to respond within the requisite time period, Plaintiffs moved for entry of default. (ECF No. 7). The clerk entered default against each Defendant on October 20, 2011.

---

[2] Because the parties are not completely diverse, subject-matter jurisdiction in this case must be based on federal-question jurisdiction. Plaintiffs cite both the LMRA and ERISA as bases for jurisdiction. As this action presents a pure breach of contract claim without any need to interpret ERISA, however, jurisdiction cannot be founded upon that statute. *Cf. Shaffer v. Veneman*, 325 F.3d 370, 372-73 (D.C. Cir. 2003). Thus, the LMRA provides the sole potential source of jurisdiction. *See* 29 U.S.C. § 185(a).

[3] The complaint does not explain the basis of this request for a percentage of the principal delinquency.

(ECF No. 8). On January 25, 2012, Plaintiffs filed the present motion for default judgment. (ECF No. 13). Plaintiffs seek a default judgment against Defendants for breach of contract in the amount of $94,010.24.

**II.  Motion for Default Judgment**

Pursuant to Fed.R.Civ.P. 55(b)(2), where a default has been previously entered and the complaint does not specify a certain amount of damages, the court may enter a default judgment upon the plaintiff's application and, if the defaulting party has appeared, notice to that party. A defendant's default, however, does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy" that "cases be decided on their merits," *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Here, more than eight months have passed since Defendants were served with the complaint, and they have failed to respond at all. As a result, the "adversary process has been halted

because of [these] essentially unresponsive part[ies]." *Id.* Default judgment against Defendants will thus be warranted if the complaint adequately pleads a breach of contract claim. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (explaining that, although the defendant is deemed to admit every well-pleaded allegation of the complaint upon entry of default, the court must nonetheless determine whether those allegations have been adequately pleaded and thus warrant relief).

### A.  Liability

In Maryland, to state a breach of contract claim, a plaintiff must allege that the defendant owed the plaintiff a contractual obligation and that the defendant materially breached that obligation. *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010). According to the complaint, the 2005 Settlement Agreement "required Southeast, Dover and ASI to: collectively pay to Plaintiffs the sum of Seventy-five Thousand Dollars ($75,000.00) plus interest . . . , which sum shall be paid in 48 equal installments." (ECF No. 1 ¶ 18). Moreover, the complaint states that "Defendants have failed and refused to make the final four payments required by [the 2005 Settlement Agreement]." (*Id.* ¶ 23). Based on these undisputed allegations, Plaintiffs have stated a breach of contract claim for which relief is warranted.

**B.   Damages**

As to damages, a defendant is not deemed to admit the complaint's allegations, *see Lawbaugh*, 359 F.Supp.2d at 422; thus, the court must make an independent determination regarding damages, *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 ($2^d$ Cir. 1999).  At the same time, Rule 54(c) limits the type of judgment that may be entered based on a party's default:  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Therefore, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount.  "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount."  *Meindl v. Genesys Pac. Techs., Inc. (In re Genesys Data Techs., Inc.)*, 204 F.3d 124, 132 (4th Cir. 2000).

The motion for default judgment asks to enforce the Consent Order, which is attached as part of the complaint (ECF No. 1-2), and recover the amounts described therein.  The total amount sought, $94,010.24, consists of: (1) outstanding delinquent principal comprising dues and welfare contributions of $32,277.57; (2) interest on the principal delinquency of $4,647.30; (3) liquidated damages of $21,854.87; (4) costs of

7

$1,030.50; (5) attorney's fees and costs for the prior litigation of $26,500.00; and (6) attorney's fees for the current litigation of $7,700.00. (ECF No. 13-1). In addition to the Consent Order, Plaintiffs submit the declaration of Mark Heffron, Business Manager and Secretary Treasurer of Plaintiff DC 51 (ECF No. 13-2), in support of these amounts. For the following reasons, Plaintiff will be granted $93,723.88 in damages.[4]

### 1. Delinquent Dues and Contributions, Liquidated Damages, and Attorney's Fees Prior to January 2005

Pursuant to the Consent Order, Plaintiffs seek $32,277.57 in outstanding delinquent dues and welfare contributions,[5]

---

[4] Plaintiffs' request and the court's grant of this default judgment does not run afoul of the Rule 54(c) prohibition on seeking default judgments exceeding the amounts demanded in the complaint. Here, the discrepancy is attributable to the award of prejudgment interest. As will be discussed, Plaintiffs are entitled to full prejudgment interest, which is greater than the preliminary amount of interest they requested in their complaint.

On default judgment, "[t]he exact amount[] for interest . . . need not be pled specifically in the Complaint." *Sheet Metal Workers' Nat'l Pension Fund v. Frank Torrone & Sons, Inc.*, No. 04CV1109, 2005 WL 1432786, at *9 (E.D.Va. June 1, 2005). It is enough that the complaint makes a distinct claim for interest. *Silge v. Merz*, 510 F.3d 157, 160 (2$^d$ Cir. 2007). In this case, the complaint refers to the Consent Order, which allows for recovery of interest "from the date owed through the date all amounts due under this Consent Order . . . are paid." (ECF No. 1-2 ¶ 3). This incorporated language is sufficient to put Defendants on notice that full prejudgment interest may be recovered.

[5] This amount is the original principal delinquency owed less the monies paid by Defendants to date.

$21,854.87 in liquidated damages assessed on the delinquent principal, and $26,500.00 in attorney's fees incurred prior to January 2005. (ECF No. 13-1, at 2). In support of this request, Plaintiffs submit the Declaration of Mark Heffron. (ECF No. 13-2, Heffron Decl., ¶ 9). The amounts specified in the Heffron Declaration are consistent with the amounts requested in the motion for default judgment (ECF No. 13-1, at 2), the amounts requested in the complaint (ECF No. 1, at 11), and the amounts described in the Consent Order (ECF No. 1-2 ¶ 1). Thus, the record supports Plaintiffs' request for $32,277.57 in remaining principal, $21,854.87 in liquidated damages, and $26,500.00 in attorney's fees incurred prior to January 2005.

    **2.  Interest on the Principal Delinquency**

Plaintiffs seek $4,647.30 in interest "that accrued on the principal delinquency before, and after, Plaintiffs filed the suit." (ECF No. 13-1, at 2). The interest is owed pursuant to the Consent Order, which refers to the "rate set by section 6621 of the Internal Revenue Code." (ECF No. 1-2 ¶ 3). According to the Heffron Declaration, this amount sought comprises $2,791.66 that has accrued from October 1, 2008, to July 31, 2010, $979.98 that has accrued from September 1, 2010, to May 30, 2011, and $875.66 that has accrued from June 1, 2011, to December 31, 2011. (ECF No. 13-2, at 4).

The court disagrees with at least one apparent assumption that Plaintiffs used in calculating interest. According to the complaint, Plaintiffs determined the interest that accrued from September 1, 2010, to May 30, 2011, based on a principal delinquency amount that included previously accrued interest. (*See* ECF No. 1 ¶ 28). The calculation of the interest that accrued from June 1, 2011, to December 31, 2011, likely proceeded in kind. Under the 2005 Settlement Agreement and the Consent Order, however, there is no indication that interest should be compounded. Indeed, neither document identifies a compounding period. Thus, the reference to the interest rate set by the Internal Revenue Code should be treated as a simple interest rate. *See Roger E. Herst Revocable Trust v. Blinds To Go (U.S.) Inc.*, No. ELH-10-3226, 2011 WL 6409129, at *27 (D.Md. Dec. 20, 2011) (assuming an interest rate specified in a contract is simple interest because "[t]here is no suggestion that [the rate] is a compound interest rate, nor does the [contract] specify any compounding period").

The court will therefore award interest based on its own independent evaluation of the record. The principal delinquency for October 2008 through August 2010 was $33,277.57. After August 2010, the principal delinquency was $32,277.57 because Defendants paid Plaintiffs $1,000.00. (ECF No. 1 ¶ 28). Using these base amounts and the interest rates set forth in the

10

Internal Revenue Code, Plaintiffs are entitled to $4,360.94 in interest.

### 3. Costs

Plaintiffs seek $1,030.50 in costs. (ECF No. 13-1, at 2). To support this request, Plaintiffs submit the Heffron Declaration, which indicates that costs included $350.00 in filing fees and $680.50 in process server fees. (ECF No. 13-2 ¶ 8). Therefore, Plaintiffs will be awarded $1,030.50 in costs.

### 4. Attorney's Fees for April 2011 to January 2012

Plaintiffs seek $7,700.00 in attorney's fees for April 2011 to January 2012. (ECF No. 13-1, at 2). To support this request, Plaintiffs submit the Heffron Declaration (ECF No. 13-2). The Heffron Declaration includes a breakdown of the hours billed and tasks performed by Plaintiffs' attorneys. (*See id.* ¶¶ 5-7). Plaintiffs' attorneys spent a total of 38.5 hours pursuing this matter, at a rate of $200.00 per hour: roughly 5.5 hours are attributable to a partner who had been practicing law for over sixteen years, and roughly 33.5 hours are attributable to her associate. (*Id.*). Although the professional experience of the associate is not indicated, a rate of $200.00 per hour is only $10.00 more than the upper end of a presumptively reasonable rate for new lawyers according to Appendix B of the Local Rules. Thus, it is not unreasonable to permit Plaintiffs to recover fees at this hourly rate for the

associate.  Moreover, per the Local Rules, the partner could have charged well above the $200.00 per hour rate.  This discount partly offsets the rates charged by the associate.  In sum, the $7,700.00 in attorney's fees sought by Plaintiffs for work performed between April 2011 and January 2012 is reasonable and sufficiently supported by the record.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for default judgment will be granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
